UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| BALTAZAR CAMACHO, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.: 3:16-CV-484-TAV |
| | ) | 3:12-CR-101-TAV-DCP-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Petitioner has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1].[1] At the Court's direction, the government filed a response [Doc. 4], and defendant, with the Court's leave, filed a late reply [Doc. 6]. Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing,[2] and Richmond's § 2255 motion will be denied.

Petitioner was the leader and primary supplier of a drug-trafficking organization that distributed at least 25 kilograms of crack cocaine in and around Knoxville, Tennessee. *United States v. Camacho*, 631 F. App'x 285, 286–89 (6th Cir. 2015). As a result of those activities he was charged with conspiring to distribute at least 280 grams of crack cocaine,

---

[1] All docket citations refer to this civil case unless otherwise indicated.

[2] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain her claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & (h). *Id.*

On the morning of his trial, Camacho entered an open guilty plea—that is, one without a plea agreement [Doc. 672, at 3–4, 3:12-cr-101]. During his plea colloquy, petitioner acknowledged that he faced a statutory penalty of 10 years up to life imprisonment for the drug conspiracy and up to 20 years' imprisonment for the money-laundering conspiracy [*Id.* at 18–19, 33–35]. According to Camacho, he entered this plea on the recommendation of his counsel, who assertedly advised that he would be sentenced to no more than twenty years in prison.

As it turned out, the sentence Camacho received was far longer than that: 470 months' imprisonment. The Court arrived at this figure based on the following calculation, which the government's brief accurately recounts:

> Based on the quantity of crack cocaine involved in petitioner's offense, he had a base offense level of 38 under the 2014 version of U.S.S.G. § 2D1.1(c)(1). (R. 670, Second Addendum to Presentence Report ("PSR").) After a two-level § 2D1.1(b)(1) enhancement for possessing a firearm while drug trafficking (R. 648, PSR at ¶ 27), a two-level § 2S1.1(b)(2)(B) enhancement for being convicted of violating 18 U.S.C. § 1956 (*id.* at ¶ 28), a four-level § 3B1.1(a) enhancement for being a leader and organizer of the conspiracy (*id.* at ¶ 30), and a two-level § 3E1.1(a) reduction for acceptance of responsibility (*id.* at ¶ 34), petitioner had a total offense level of 44, which, pursuant to Application Note 2 to U.S.S.G. § 5A, was reduced to an effective offense level of 43 (*id.* at ¶ 35). Combined with petitioner's criminal history category of I, that offense level yielded an advisory Guidelines range of life imprisonment, i.e., 470 months' imprisonment (*id.* at ¶ 55).

2

[Doc. 4, at 2]. Camacho's objections to the Presentence Report were overruled. The Sixth Circuit affirmed his conviction and sentence on direct appeal. *United States v. Camacho*, 631 F. App'x 285, 286–89 (6th Cir. 2015).

Camacho has now filed a timely § 2255 motion. In it he asserts that his counsel was ineffective in the following ways: promising Camacho that he would receive no more than a 20-year sentence if he pleaded guilty [Doc. 2, at 6–8]; not advising petitioner of his rights under the Vienna Convention on Consular Relations and not investigating whether the government had informed the Mexican consulate of petitioner's arrest and prosecution [*Id.* at 8–18]; not objecting to the § 2S1.1(b)(2)(B) enhancement [*Id.* at 18–19]; not properly objecting to the § 2D1.1(b)(1) enhancement [*Id.* at 19–20]; and not seeking a three-level reduction for petitioner's acceptance of responsibility [*Id.* at 20–21].

Camacho's first claim—that his counsel was ineffective for promising him that, if he pleaded guilty, he would be sentenced to no more than 20 years (when in fact he was sentenced to 40 years' imprisonment)—is also his best. But although his counsel's performance probably was constitutionally deficient, because Camacho's Rule 11 plea colloquy cured any resulting prejudice, this claim nevertheless fails.

If Camacho's attorney did in fact advise him that he would receive no more than 20 years, as Camacho alleges, that advice was very likely constitutionally deficient. As it turned out, Camacho was sentenced to nearly twice that much. The failure of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Smith v. United States*, 348 F.3d 545,

553 (6th Cir. 2003) (citing *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)). Grossly underestimating a defendant's sentencing exposure by nearly one-hundred percent is not "professional guidance" as that phrase is normally understood.

However, the record demonstrates that, even if Camacho's attorney did in fact give him what the Court assumes would be deficient advice, it did not prejudice him in light of his plea colloquy. There, Camacho affirmed that he had "discussed any maximum possible penalties, including any imprisonment" with his attorney [Doc. 672, at 14, 3:12-cr-101]. Moreover, he denied that "any person" had promised or suggested that by pleading guilty he would "receive a lighter sentence of other form of leniency by pleading guilty" [*Id.*]. It was made clear during the plea colloquy that Camacho was subject to a maximum sentence of life in prison for Count One: first by the prosecutor and then by the Court, the latter of which stated, "The punishment for Count One is a term of imprisonment of at least ten years and up to life" [*Id.* at 18, 33]. In response to the Court's question, Camacho indicated that he understood "the statutory penalties that [he] face[d] by pleading guilty to Count One."

Camacho's statements are dispositive; as the above-quoted exchanges demonstrate, Camacho knew that he was potentially facing a much longer sentence than this allegation suggests. These prior sworn admissions "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In light of Camacho's on-the-record statements, he cannot demonstrate that he would have gone to trial without the alleged misadvice by his lawyer, like this claim requires. *See Hill v. Lockhart*, 474 U.S. 52, 59

(1985) ("[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Any prejudice that would have resulted from that advice was cured by Camacho's plea colloquy.

Camacho's second claim is that his counsel was ineffective for failing to advise or pursue Camacho's rights under the Vienna Convention on Consular Relations. But, as the Sixth Circuit has explained, that treaty does not create any rights that are individually enforceable in court. *See United States v. Emuegbunam*, 268 F.3d 377, 389-94 (6th Cir. 2001) ("[W]e hold that the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce."). Camacho therefore was not prejudiced by his counsel's purported failure to pursue rights that are not enforceable in court.

Camacho also claims that his attorney was ineffective at sentencing in three ways: for not objecting to the § 2S1.2(b)(2)(B) money-laundering enhancement, for not objecting to the § 2D1.1(b)(1) firearm enhancement, and for not seeking an acceptance-of-responsibility reduction. However, Camacho was not prejudiced by any of these asserted errors, because raising each argument would have made no difference to his sentence. It is well established that deciding not to pursue meritless claims does not make counsel ineffective. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Because each of Camacho's sentencing-related claims fits that bill, relief will be denied.

The § 2S1.2(b)(2)(B) money-laundering enhancement was properly applied, despite Camacho's argument that, according to the application notes, the enhancement "shall not apply if defendant was convicted of a conspiracy under 18 U.S.C. § 1956(h)." U.S.S.G. § 2S1.1, cmt. n. 3(C). The next clause, which Camacho selectively omits, adds the following: "and the sole object of that conspiracy was to commit an offense set forth in 18 U.S.C. § 1957." *Id.* Although Camacho was convicted of a conspiracy under 18 U.S.C. § 1956(h), the object of that conspiracy was not to commit an offense in § 1957, but rather to commit a violation of § 1956(a)(1)(B)(i) [Doc. 3, at 12–14]. He therefore falls outside the exception he wishes to invoke based merely on the plain (and complete) text of that provision. Because the enhancement was properly applied, Camacho was not prejudiced by any ineffective assistance that might have occurred.

With respect to the § 2D1.1(b)(1) firearm enhancement, the record is clear that Camacho's attorney did, in fact, object to that enhancement [Doc. 665, at 4, 3:12-cr-101]. Camacho appears to argue that the objection was not a "meaningful" one, but that argument is contradicted by the transcript of his sentencing hearing. His attorney raised the objection [Doc. 673, at 6, 3:12-cr-101], but the Court overruled it because two witnesses—each of whom was crossexamined by Camacho's attorney—testified that they had each seen Camacho carry a firearm during drug transactions [*Id.* at 33, 66]. The enhancement was therefore properly applied, so Camacho was not prejudiced by his attorney's purportedly deficient performance.

Camacho's final ineffective-assistance-of-counsel claim challenges his counsel's not seeking a three-level acceptance-of-responsibility reduction. Petitioner was granted a two-level reduction under § 3E1.1(a) [Doc. 648, PSR at ¶ 34, 3:12-cr-101]. The third level, which is available only on motion of the government, was not available to Camacho because he pleaded on the morning of his trial and thus did not "timely notify authorities of his intention to enter a plea of guilty" and enable "the government to avoid preparing for trial." U.S.S.G. § 3E1.1(b). Camacho, his counsel, and the Court were all aware, at the time Camacho pleaded guilty, that the third-level reduction under § 3E1.1(b) was not available [*Id.* at 7–9]. Because under no circumstance could Camacho have received the third-level reduction under § 3E1.1(b), he was not prejudiced by his attorney's not seeking it.

For all of these reasons, Camacho is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24. Moreover, because Camacho has not made a substantial showing of the denial of a constitutional right and jurists of reason would not dispute the above conclusions, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE.**

28 U.S.C. § 2253; Fed. R. App. P. 22(b).  A judgment will enter **DENYING** the Motion [Doc. 1].

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE